# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **JEFFREY PALMORE**, ET. AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:09CV1073SNLJ |
| ) | |
| **CITY OF PACIFIC, ET. AL.**, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This action was removed from the Circuit Court for Franklin County, State of Missouri on or about July 8, 2009 on grounds of subject matter jurisdiction. As the case stands presently before this Court, plaintiffs seek monetary damages for a state claim for "moneys had and received" (Count I), various constitutional violations brought pursuant to §1983 (Count II), and a state claim for violations of the Missouri Merchandising Practices Act, §§407.025 *et. seq*. (Count III). This matter is before the Court on defendants City of Pacific and Harold Selby, City Administrator's (hereinafter referred to as the Pacific defendants) joint motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) Fed. Rules of Civil Procedure [6], filed July 15, 2009.[1] Responsive pleadings have now all been filed and the matter is ripe for disposition.

---

[1]On or about December 7, 2009 defendant Alan J. Bruns and corporate defendant R.H. Bruns Vault & Monument Co.(hereinafter referred to as the Bruns defendants) filed "replies" simply stating that they "incorporate[s] as if fully set forth herein Defendants City of Pacific and Harold Selby's Supplemental Memorandum of Law Regarding Small Claims Court Dismissal and Res Judicata filed on November 30, 2009." Documents 20 and 22, respectively. Although the Bruns defendants never filed any motion or any memorandum indicating that they were joining in the Pacific defendants' motion to dismiss, the Court will consider these "replies" to be a belated joining in the instant dismissal motion as to Count I. Thus, any findings of law and/or fact regarding Count I of the plaintiffs' complaint will be applicable to all parties. However, in the future, counsel for the Bruns defendants shall file a definitive pleading which clearly

Only Counts I and II are directed to the Pacific defendants. The Pacific defendants seek to dismiss Count I pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction; and to dismiss Count II pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Since Count II is the only count asserting federal claims, the Court will first address the viability of these claims before addressing whether the Court has subject matter jurisdiction over the state law claim of "money had and received" as contained in Count I. If the Court should determine that the federal claims, as contained in Count II, fail to survive Rule 12(b)(6) scrutiny, the Court may elect to decline to exercise supplemental jurisdiction over the state law claims of Count I (as well as Count III), making a Rule 12(b)(1) review unnecessary.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)(abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., 127 U.S. at 1974. A complaint must set forth

---

indicates the intention to join in a dispositive motion, or any part therein, so that there is no confusion with the Court.

factual allegations which are enough to "raise a right to relief above the speculative level." Id., 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005) *citing* Schaller Tel. Co. v. Golden Sky Systems, 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1969, n.8; Neitzke v. Williams, 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a complaint's factual allegations.").

Plaintiffs seek damages alleging that the Pacific defendants and the Bruns defendants have been conducting burial procedures in a manner contrary to local ordinance and/or charging "burial fees" beyond that mandated by local ordinance. In Count I, the plaintiffs jointly seek the return of these allegedly overpaid fees from all defendants. In Count II, plaintiff Palmore independently seeks damages, from the Pacific defendants and defendant Alan Bruns, for various constitutional violations in connection with an alleged interference with his ability to speak out at a City of Pacific Board of Alderman, an alleged refusal to allow plaintiff access to cemetery records located at the City of Pacific city hall facility, and for alleging interfering with the plaintiff's ability to conduct funeral services on June 27, 2008 in the Pacific City Cemetery .

## Count II

In Count II, under §1983, plaintiff Palmore alleges a variety of constitutional violations regarding his First Amendment free speech rights, Fourteenth Amendment due process rights, and Fourteenth Amendment equal protection rights. Firstly, plaintiff contends that beginning in October 2007 he began attending Pacific Board of Alderman meetings wherein he publically and repeatedly asserted that [defendants] were in violation of the Pacific City Code with regard to grave opening fees. He further asserts that he also, at these meetings, complained that defendant Alan Bruns did not understand the grave numbering system in the municipal cemetery and, therefore, was double-selling grave sites. As a result of these public accusations, and the filing of his earlier Small Claims Court lawsuit, plaintiff Palmore contends that he was denied immediate entrance to the municipal cemetery in order to conduct a funeral unless he signed an interment authorization. He did however enter the cemetery through another entrance and conducted the funeral. However, upon the police being called to the cemetery by defendant Bruns, Palmore ultimately signed the internment authorization. Palmore contends that the blocking of the south

4

cemetery entrance was a violation of a Missouri statute, a violation of his due process rights because such interment authorization requirement was "not enacted into law until July 15, 2008 [eighteen (18) days after the funeral incident], a violation of his equal protection rights because he was singled out, and a violation of his right to free speech by intimidating Palmore to refrain from any further public criticism of the defendants.

Secondly, plaintiff Palmore contends that his equal protection rights were violated because he was denied access to cemetery records unless a Pacific city clerk was present, and he had submitted a "sunshine request".

Finally, plaintiff Palmore contends that his equal protection and free speech rights were violated because he was limited to "speaking for no more than five minutes at Board of Alderman meetings, while other speakers have been allowed to speak in excess of the five minute time limit."

Although in his complaint, plaintiff repeatedly asserts that his First Amendment free speech, and Fourteenth Amendment substantive due process and equal protection rights have been violated; he appears to backtrack in his response. In his response, he states that the defendants have "incorrectly and inaccurately" stated that his due process and equal protection claims are based on the events referenced above. Instead, he now states that "Plaintiff Palmore's Constitutional claims are based on the retaliation by the Pacific Defendants because Plaintiff Palmore spoke out at Aldermanic meetings and filed a lawsuit against the Pacific Defendants." Document #13, pg. 13. Furthermore, he continues to argue at great length how his First Amendment free speech rights have been violated. Thus, it would appear that plaintiff is only asserting a §1983 First Amendment retaliation claim, and the cemetery access and cemetery records events are only set forth as support for his §1983 First Amendment retaliation claim.

It is difficult for the Court to discern the exact substantive nature of Count II since plaintiff repeatedly argues about his due process and equal protection rights. If plaintiff were truly asserting separate §1983 claims for violation of his due process rights, violation of his equal protection rights, and First Amendment retaliation, then such claims should have been set out in separate counts. The inartful pleading of Count II unfortunately muddies the waters in which plaintiff is asserting a constitutional claim. Thus, the Court will err on the side of caution, and address Count II as asserting separate §1983 claims for violation of Fourteenth Amendment due process rights, violation of Fourteenth Amendment equal protection rights, and First Amendment retaliation.

To prevail under §1983, plaintiff Palmore must show that defendants 1) acted under the color of state law; and 2) that the alleged wrongful conduct deprived Palmore of a constitutionally protected federal right. Schmidt v. City of Bella Villa, et. al., 557 F.3d. 564, 571 (8th Cir. 2009); DuBose v. Kelly, 187 F.3d. 999, 1001 (8th Cir. 1999); Gregory, et. al. v. City of Rogers, Arkansas, et. al., 974 F.2d. 1006, 1010 (8th Cir. 1992). There is no dispute that the defendants acted under the color of state law; therefore, the threshold inquiry is whether the defendants deprived Palmore of a substantive right arising under the Fourteenth Amendment.

**I. Due Process**

In order to establish a violation of a substantive due process rights by a public official, a plaintiff must show 1) that the official violated one or more fundamental constitutional rights, and 2) that the conduct of the public official was shocking to the "contemporary conscience". McLean, et. al. v. Gordon, et. al., 548 F.3d. 613, 616 (citations omitted). Thus, in order to establish a substantive due process claim, the plaintiff "must show that the behavior of the [official] was so egregious, so outrageous, that it may fairly be said to shock the contemporary

6

conscience, and that the conduct violated one or more fundamental rights." Clemmons v. Armontrout, 477 F.3d. 962, 965 (8th Cir. 2007), *quoting* Terrell v. Larson, 396 F.3d. 975, 978 (8th Cir. 2005)(quotations and citations omitted) and Moore v. Briggs, 381 F.3d. 771, 773 (8th Cir. 2004). "To violate substantive due process, the conduct of an executive official must be conscience shocking *and* must violate `one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Terrell v. Larson, 396 F.3d. 975, 978 n.1 (8th Cir. 2005) *quoting* Moran v. Clarke, 296 F.3d. 638, 651 (8th Cir. 2002). "Mere negligence is not conscience-shocking and cannot support a claim alleging a violation of a plaintiff's substantive due process rights." McLean, at 616 *quoting* Avalos v. City of Glenwood, 382 F.3d. 792, 799 (8th Cir. 2004).

Plaintiff alleges that the defendants intentionally engaged in the afore-referenced conduct in order to "silence" him. Even if these acts were allegedly intentional, plaintiff still fails to allege or argue in any manner what fundamental constitutional or federal right was violated by the defendants allegedly blocking his access to a municipal cemetery or denying him unrestricted access to municipal cemetery records. Simply stating his "due process rights were violated" is insufficient. Moreover, he further alleges that these acts were done in violation of either state law or a (non-existent) municipal ordinance.[2] His generalized assertions that he had to gain access to the cemetery through a different entrance and sign a form before completing the internment; and had to sign another form and be observed by a municipal employee while

---

[2]Even if intentional, violations of state law or municipal ordinances do not establish a constitutional violation for purposes of §1983. Booker v. City of St. Louis, 309 F.3d. 464, 467 (8th Cir. 2002); Doe v. Gooden, 214 F.3d. 952, 956 (8th Cir. 2000) *citing* Ebmeier v. Stump, *supra.*; Ebmeier v. Stump, 70 F.3d. 1012, 1013 (8th Cir. 1995); Kornblum v. St. Louis County, Mo., 48 F.3d. 1031 (8th Cir. 1995).

looking through municipal cemetery records do not allege acts so "outrageous" or "conscience-shocking" as to rise to the level of egregiousness required to support an action for a substantive due process violation. "Many harms, though caused by a state actor, do not fall within the scope of section 1983, for section 1983 does not turn the Fourteen Amendment into a font of tort law that supercedes the tort systems already available under individual state laws." Gregory, at 1009 (citations omitted); *see also* DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 1006-07 (1989)(Due Process Clause of the Fourteenth Amendment does not transform every tort committed by a state actor into a constitutional violation). The defendants' alleged actions were inconveniences that plaintiff, by his own assertions, was able to overcome.

Plaintiff's claim for violation of his substantive due process rights will be dismissed for failure to state a claim upon which relief can be granted.

## II. Equal Protection

Plaintiff appears to contend that defendants have selectively enforced ordinances and/or the Sunshine Law against him in violation of his Fourteenth Amendment equal protection rights. His allegations are less than clear but he appears to combine "selective enforcement" and "class of one" claims into a single claim that defendants have acted to violate his equal protection rights as a result of improper motivation; i.e. being an outspoken critic of the City of Pacific motivated the referenced acts.

The Equal Protection Clause requires that the government treat all similarly situated people alike. Barstad v. Murray County, 420 F.2d. 880, 884 (8th Cir. 2005) *citing* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Supreme Court recognizes an equal protection claim for discrimination against a "class of one". Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Barstad, at 884; *see also*, Discovery House, Inc. v.

Consolidated City of Indianapolis, et. al., 319 F.3d. 277, 282 (7th Cir. 2003). Wherein a claim such as this one does not involve a suspect class or a fundamental right, the proper level of scrutiny is a rational relationship test. Barstad, at 884; *see also*, Village of Willowbrook v. Olech, 528 U.S. at 564; Nolan v. Thompson, 521 F.3d. 983, 990 (8th Cir. 2008); RJB Properties v. Board of Education of the City of Chicago, 468 F.3d. 1005, 1009-1010 (7th Cir. 2006); Discovery House, at 282. The purpose of a class-of-one claim is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Barstad, at 884 *quoting* Village of Willowbrook v. Olech, 528 U.S. at 564. A class-of-one claimant must prove that the State, "intentionally treated [it] differently from others similarly situated and that there is no rational basis for the difference in treatment." Nolan, at 989-90 *quoting* Village of Willowbrook v. Olech, 528 U.S. at 564; Barstad, at 884.

The Equal Protection Clause also prohibits the selective enforcement of the law based on "unjustifiable" factors. *See*, United States v. Deering, 179 F.3d. 592, 594 (8th Cir. 1999); *see also*, Stepnes v. Tennessen, et. al., 2006 WL 2375645, *8 (D.Minn. August 16, 2006). Just as a "class of one" claim analysis, a "selective enforcement" claim is also subject to a rational basis scrutiny (where as here no suspect class or fundamental right is involved).

In the present case, plaintiff has alleged nothing more than being denied access to a municipal cemetery (on one occasion) without proper authorization and being required to follow municipal procedures in accessing municipal cemetery records. He alleges that each of these events only occurred once, but that "others" have not been given the same restrictions. He fails to identify any "others" or when "others" were given preferential treatment. He simply makes the broad, speculative assertion that "others" were treated more favorably. He fails to show that

9

he was similarly situated to persons who were treated differently by the defendants, and fails to show that the defendants had no rational basis for the dissimilar treatment.

State action is presumed constitutional, and plaintiff's broad generalized assertions that "others" were treated differently is not adequate to overcome this presumption. Plaintiff's claim for violation of his equal protection rights will be dismissed for failure to state a §1983 claim.

## III. First Amendment retaliation

Plaintiff contends that his outspoken criticism at Pacific Board of Alderman meetings motivated the defendants to shorten his allotted "five minutes" speaking time.[3]

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." United States Constitution, Amendment I. However, the right of free speech is not without some limitations. "The freedom of expression protected by the First Amendment is not inviolate; the Supreme Court has established that the First Amendment does not guarantee persons the right to communicate their views `at all times or in any manner that may be desired.'". Rowe v. City of Cocoa, Florida, 358 F.3d. 800, 801 (11th Cir. 2004) *quoting* Jones v. Heyman, 888 F.2d. 1328, 1331 (11th Cir. 1989)(*quoting* Heffron v. International Soc'y for Krishna Consciousness, 452 U.S. 640, 647 (1981)). The right to communicate one's opinion may be subject to certain restrictions depending upon the nature of the "forum"; i.e., whether the forum is a traditional public forum, a "designated limited public forum", or a non-public forum. Cornelius v. NAACP legal Defense & Education Fund, Inc., 473 U.S. 788, 802 (1985).

---

[3]Plaintiff, again, appears to incorporate a generalized equal protection violation claim into his First Amendment retaliation claim. However, plaintiff's broad generalized assertion that "others" were allowed to speak longer fails to successfully prevail under a rational basis test. He fails to allege how he was similarly situated to persons who were treated differently by Mayor Adams, and that Mayor Adams had no rational basis for treating him differently. Therefore, the Court will only address plaintiff's free speech claim as a First Amendment retaliation claim.

Designated limited public forums may include places that "generally [are] not open for public expression, but that the government has opened for use for free speech for only a limited period of time, a limited topic, or a limited class of speakers." Arkansas Educational Television Commission v. Forbes, 523 U.S. 666, 678 (1998); Forbes v. Arkansas Educational Television Communications Network Foundation, 22 F.3d. 1423, 1429 (8th Cir. 1994)(internal citations omitted). Regulation of speech activity in a designated limited public forum is subject to strict scrutiny. *See*, United States v. Kokinda, 497 U.S. 720, 726-27 (1990). However, unlike a traditional public forum, the government " is not required to indefinitely retain the open character" of a designated limited public forum. Perry Education Association v. Perry Local Educators Association, 460 U.S. 37, 46 (1983); Piscottano v. Town of Somers, et. al., 396 F.Supp.2d. 187, 202 (D.Conn. 2005)(*citing* Perry Education Ass'n, *supra.*). When the government creates a limited forum for speech, certain restrictions may be necessary; however, the restriction(s) must not discriminate against speech on the basis of viewpoint and it must be reasonable in light of the purpose served by the forum. Good News Club v. Milford Central School, 533 U.S. 98, , 106-7 (2001); Carlow, et. al. v. Mruk, et. al., 425 F.Supp.2d. 225, 242 (D.R.I. 2006)(*citing* Good News Club, *supra.*). A government may impose valid time, place, and manner restrictions on protected First Amendment speech, provided that such regulations are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Perry Educ. Ass'n. v. Perry Local Educators Ass'n, 460 U.S. at 45; Harmon v. City of Kansas City, Missouri, 197 F.3d. 321, 328 n7 (8th Cir. 1999)(*citing* Ward v. Rock Against Racism, *supra.*); Wright v. Anthony, et. al., 733 F.2d. 575, 577 (8th Cir. 1984)("Reasonable

time, place and manner restrictions on the exercise of first amendment rights are not repugnant to the Constitution.").

By opening its meetings to the citizenry of the City of Pacific for participation and discussion of matters of public concern, the meetings of the defendant City's BOA were designated limited public forums, and thus, subject to reasonable limitations as to time, place and manner of speech. *See*, Rowe, *supra.* (court upheld residency requirement for speaking at city council meetings); White v. City of Norwalk, 900 F.2d. 1421, 1425 (9th Cir. 1990)(no First Amendment violation for restricting speech to agenda items at city council meeting); Carlow v. Mruk, at 241 (annual meeting of fire district was limited designated public forum and limiting speakers to residents only was a permissible limitation of free speech rights); Piscottano, *supra.* (meeting of 3-member Board of Selectmen constituted a designated limited public forum); Jocham v. Tuscola County, et. al., 289 F.Supp.2d. 887, 894-95 (E.D.Mich. 2003)(county board of commissioners' meeting held to be a designated limited public forum); *see also*, Thorton v. City of Kirkwood, 2008 WL 239575, *4 (E.D.Mo. January 28, 2008)(Kirkwood's city council meetings and public hearings held to be a designated limited public forum).

Plaintiff does not question the "labeling" of the BOA meetings as designated limited public forums nor does he question whether or not the various actions taken by the City were reasonable restrictions on free speech. Plaintiff, instead, contends that the alleged action of limiting his speaking time was taken in retaliation for his constant and vocal criticism of city decisions and intended solely to "quiet" him.

"[C]riticism of public officials lies at the very core of speech protected by the First Amendment." Naucke v. City of Park Hills, et. al., 284 F.3d. 923, 927 (8th Cir. 2002) *quoting* Colson v. Grohman, 174 F.3d. 498, 507 (5th Cir. 1999)(*citing* New York Times Co. v. Sullivan,

376 U.S. 254, 269-70 (1964)). Retaliation by a public official in response to an exercise of First Amendment rights forms a basis for §1983 liability. Naucke, at 927. To establish a claim for First Amendment retaliation under §1983, the plaintiff must show that s/he 1) "engaged in a constitutionally protected activity"; 2) that the government official's adverse action caused him/her to suffer an injury which would "chill a person of ordinary firmness from continuing . . . in that activity"; and 3) that the adverse action was motivated in part by . . . the exercise of [his] constitutional rights.". Naucke, at 927-28 *quoting* Carroll v. Pfeffer, 262 F.3d. 847, 850 (8th Cir. 2001)(*quoting* Bloch v. Ribar, 156 F.3d. 673, 678 (6th Cir. 1998)).

The defendants do not dispute, and the Court finds, that the plaintiff's alleged vocal criticism at BOA meetings is a First Amendment protected activity. *See*, Noacke, at 928 (plaintiff's criticism of the city council and the city administrator "is the type of speech intended to be protected by the First Amendment."). For purposes of this motion (as it regards the plaintiff's retaliation claim), the Court will presume that the alleged actions by the City were motivated in part by the constant and vocal criticism of the City's application of certain ordinances by the plaintiff at the BOA meetings. However, after carefully reviewing the parties' pleadings, and relevant caselaw, the Court finds that the actions attributed to the City are not so egregious as to "chill a person of ordinary firmness from continuing . . . in the activity."

"In some cases, embarrassment, humiliation and emotional distress may be sufficient to support a §1983 claim. But, `it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." Noacke, at 928 (internal citations omitted). The test for whether a person of "ordinary firmness" would be deterred from speaking out is well-established and "designed to weed out trivial matters from those deserving the time of the courts

13

as real and substantial violations of the First Amendment." Garcia v. City of Trenton, 348 F.3d. 726, 728-29 (8th cir. 2003). "The test is an objective one, not subjective. The question is not whether the plaintiff herself was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done. . . What would a person of `ordinary firmness' have done [in reaction to receipt of parking tickets following a heated exchange between plaintiff and city official]?" Garcia v. City of Trenton, at 729.

      In Garcia v. City of Trenton, *supra.*, the Court found that a jury could have found (as it did) that a person of "ordinary firmness" was deterred from speaking out because by issuing the parking tickets, "[d]efendant, in his capacity as Mayor, engaged the punitive machinery of government in order to punish Ms. Garcia for her speaking out." Garcia v. City of Trenton, at 729. In the instant case, no "punitive machinery of government" was utilized against the plaintiff. By his own admission, plaintiff has specifically pleaded that despite the City's actions, his "public criticism" continued. Furthermore, plaintiff was not silenced, he was simply not able to speak critically as long as he wished at these meetings. Although plaintiff contends he was not disruptive, "[A] speaker may disrupt a [city] Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies." Thorton, at *5 *quoting* White v. City of Norwalk, at 1425. Restricting a speaker may be said to serve a significant governmental interest in conserving time and in ensuring that others had an opportunity to speak; and therefore, not unreasonable. Wright v. Anthony, 733 F.3d. 575, 577 (8th Cir. 1984).

      Although plaintiff was engaged in a constitutionally protected activity when he sought to repeatedly criticize the City at the BOA meetings during the public comment portion of the meetings, the City's actions would not chill a person of ordinary firmness from continuing to speak. Given that plaintiff alleges he attended several meetings and continued to voice his

opinions despite the time limitation on his speech, the five (5) minute time limitation, at best, is a *de minimis* injury. Even reading the plaintiff's allegations in a light most favorable to him, plaintiff remained free to attend the BOA meetings, and to criticize the BOA (and defendants), and in fact, he did. *See*, Shero v. City of Grove, Oklahoma, 510 F.3d. 1196, 1203-04 (10th Cir. 2007).

Plaintiff has failed to state a §1983 First Amendment retaliation claim in Count II.

## **Municipal Liability**

Liability under §1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation, Monell v. New York City Department of Social Services, 436 U.S. 658, 690-94 (1978); Davison v. City of Minneapolis, Minnesota, 490 F.3d. 648 (8th Cir. 2007); Granda v. City of St. Louis, 472 F.3d. 565, 568 (8th Cir. 2007); Avalos v. City of Glenwood, 382 F.3d. 792, 802 (8th Cir. 2004), or is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage with the force of law." Granda, at 568 *quoting* Kuha v. City of Minnetonka, 365 F.3d. 590, 603 (8th Cir. 2003). Liability will not attach simply because the municipality employs the alleged tort-feasor. Monell, 436 U.S. at 694.

"Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability." Russell v. Hennepin County, 420 F.3d. 841, 846 (8th Cir. 2005) *quoting* Angarita v. St. Louis County, 981 1537, 1546 (8th Cir. 1992)(*citing* St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988)). Although proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, *see,* Davison, *supra.*, *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985), "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for

setting policy in that area of the government's business." Davison, *supra.*, *quoting* Praprotnik, 485 U.S. at 123; *see*, Angarita, at 1546.

There is a distinction between final policymaking authority and final decisionmaking authority. In Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), the Supreme Court supplemented its pronouncement that "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id., 475 U.S. at 483, n.12. For example, a county sheriff may have the discretion to hire and fire sheriff department employees but this does not make him the county official responsible for establishing county employment policy. This would be true even if the county sheriff exercised that discretion in an unconstitutional manner. *See*, Davison, *supra. citing* Pembaur, 475 U.S. at 483, n.12. Whether an official had final policymaking authority is a question of state law. Pembaur, 475 U.S. at 483 (noting that "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.").

"Claims against a municipality based on the acts of an individual officer or entity instead of a written policy or code have succeeded in circumstances where the action was not `subject to significant review' because the officer was in a `policy making position . . . represent[ing] the official policy of the municipality.'" Granda, at 568 *quoting* McGautha v. Jackson County Collections Dept., 36 F.3d 53, 56 (8th Cir. 1994). However, before a municipality can be held liable, there must be an unconstitutional act by the municipal employee or official. Russell, at 846; Avalos, at 802. A municipality is not liable under §1983 for the negligent acts of its employees/officials. Russell, at 846 *citing* Daniels v. Williams, 474 U.S. 327, 330-31 (1986); *see also*, Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 405 (1997).

16

"A 'policy' is a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question.'" Russell, at 847 *quoting* Hayes v. Faulkner County, 388 F.3d. 669, 674 (8th Cir. 2004)(*quoting* Pembaur, 475 U.S. at 483-84). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Russell, at 847 (citation omitted).

If the alleged constitutional violator is not a "final policymaker", then liability may be established by showing that the alleged misconduct was so persistent among the rank-and-file employees of the municipality as to constitute a "custom" with the "force of law". "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is 'so permanent and well-settled . . as to [have] the force of law.'" Russell, at 849 *quoting* Harris v. City of Pagedale, 821 F.2d. 499, 504, n7 (8th Cir. 1987)(*quoting* Monell, 436 U.S. at 691). In order to establish a constitutional violation resulting from a municipal custom, a plaintiff must show that his/her alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized. Russell, at 849 *citing* Larson v. Miller, 76 F.3d. 1446, 1453 (8th Cir. 1996)(en banc). Central to this standard is that the alleged misconduct must be "pervasive constitutional violations"; thus, liability for an unconstitutional custom or practice cannot arise from a single act. McGautha, at 56-57 (citations omitted).

Plaintiff's claim for municipal liability[4] fails to state a viable claim for several reasons.

---

[4]Since plaintiff has named defendant Harold Selby in his official capacity only, plaintiff's §1983 claim(s) are in actuality only against the City of Pacific. *See*, Will v. Michigan Dept of State Police, 491 U.S. 58, 71 (1989).

Firstly, nowhere in his complaint has plaintiff Palmore specifically alleged a policy or custom carried out by defendants which cause his alleged constitutional violations. He simply sets out three (3) factually different events which he believes shows that the defendants are violating his constitutional rights. Secondly, the Court has determined that plaintiff has failed to state a viable claim for any constitutional deprivation in connection with these events. <u>Williams v. City of Carl Junction, Missouri</u>, 480 F.3d. 871, 878 (8th Cir. 2007)(failure to set forth a claim for a deprivation of a constitutional right is fatal to a §1983 claim against the municipality) *citing* <u>Monell v. Dept of Soc. Services of New York</u>, 436 U.S. 658, 694 (1978). Finally, these "instances of constitutional violations" are independent, isolated incidents that do not show a "widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." It wasn't until his response that plaintiff attempted to string together these events to somehow demonstrate a "policy" to single plaintiff out. This is insufficient to state a viable claim for municipal liability. Plaintiff Palmore has failed to state a §1983 municipal liability claim in Count II.

In light of the Court's findings above, Count II will be dismissed for failure to state a claim upon which relief can be granted.

Since Count II of the plaintiffs' complaint fails to state a federal claim upon which relief can be granted, the only remaining claims are the plaintiffs' Count I claim for "money had and received" and Count III for fraud under the Missouri Merchandising Practices Act. The Court declines to exercise supplemental jurisdiction over the remaining state law claims as contained in Counts I and III. A federal district court has discretion to decline jurisdiction if it has "dismissed al claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered

under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.2d. 880, 888 (8th Cir. 2005) *quoting* Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988). Having determined that plaintiffs have failed to state any federal claims, the Court determines that the Missouri state court is a better forum to adjudicate the remaining state law tort claim and state statutory violation claims as set forth in the plaintiffs' complaint. Thomas v. Dickel, 213 F.3d. 1023, 1026 (8th Cir. 2000); 28 U.S.C. §1367(c)(3). Therefore, the Court will remand this case to the Circuit Court for Franklin County, Missouri for further proceedings.

    Dated this __30th__ day of March, 2010.

                                                                      _____
                                                                   UNITED STATES DISTRICT JUDGE